UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HATICE CULLINGFORD, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-11-523 |
| | § | |
| CITY OF HOUSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Defendants the City of Houston ("Houston" or "the City") and Officer H.J. Morales, Jr.'s ("Morales") motion to dismiss Plaintiff Hatice Cullingford's claims against them under state law and her federal claims against the City based on purportedly unlawful customs or practices. Doc. 7. Specifically, these Defendants contend that Cullingford's state law claims must be dismissed for Cullingford's failure to comply with state law requirements for waiver of sovereign immunity and that her federal claims against the City under 18 U.S.C. § 1983, in which Cullingford attempts to show that the City engaged in a pattern or practice of constitutional violations, must be dismissed for failure adequately to state a claim on which relief can be granted. In the alternative, the Defendants move to strike Cullingford's "references to these alleged customs, policies, and practices described in paragraphs 18 through 26 of her first amended complaint . . . because they are overly prejudicial." Doc. 7 at 7.

The Court notes at the outset that the motion is exceedingly limited, addressing itself only to the issues of state law sovereign immunity waiver requirements and municipal liability.

Having reviewed the motion, the facts of this case, and the relevant law, the Court determines that Defendants' motion to dismiss should be granted. The Court therefore dismisses

Cullingford's state law claims against all Defendants and her federal claims against the City of Houston for failure to allege facts demonstrating that the City had a policy or custom of using excessive force, unreasonable search and seizure, unlawful restrictions on arrestees speech, or failing to train and supervise its employees. Because Cullingford has admitted that she failed to comply with the state law requirements and because that failure cannot now be remedied, her claims under state law are dismissed with prejudice.

Background

Cullingford alleges that this case began, in a rather strange fashion, on the evening of August 5, 2009. Doc. 6 at 3. That night, Cullingford watched as two people allowed their dog to relieve himself on her lawn. Cullingford told the dog-walkers "not to do this," whereupon they "proceeded to berate Dr. Cullingford and the dog lunged" at her. *Id.* One of the dog-walkers "then stated *he was going to get his gun* and they left." *Id.*

Later that evening, presumably in response to a call from the dog-walkers, several Houston police officers, including Morales, came to Cullingford's house and arrested her. Cullingford alleges that these officers, without her permission and while she was handcuffed in the back of a police car, searched her house for over an hour and also searched Cullingford's purse. Cullingford additionally alleges that the officers threatened her with a Taser and that the officers injured her shoulder, although she does not identify how. *Id.* The officers took Cullingford and her purse to a Houston city jail on Mykawa Road where she was held for fifteen hours. *Id.* at 4.

Cullingford alleges that while she was in the Mykawa Road jail, she was "forcefully grabbed and shoved by several jailers in great excess for any need to use such force [sic] causing pain, bruising and lacerations." *Id.* "When Dr. Cullingford complained about the manner in

which her purse was being searched by one of the jail intake personnel [he] verbally threatened Dr. Cullingford with 'Tasering' by the jailer unless she quit speaking." *Id.* Cullingford states that "[b]ased upon the paperwork and information provided by Defendant H.J. Morales Jr.[,] [she] was charged with assault by threat;" a charge which subsequently was dismissed on March 5, 2010. Cullingford contends that this charge was based upon failure of the Houston police to "investigate the matter properly," and that "Cullingford did not commit any crime nor was there any probable cause to arrest or charge . . . [her] with any crime." *Id.* Cullingford additionally asserts that she endured "pain and suffering, anxiety, lost sleep, fear, embarrassment and mental anguish" as a result of these events. *Id.*

Legal Standard Under Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b) (6). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office,* 530 F.3d 368, 372 (5th Cir. 2008). Under Rule 8(a)(2), plaintiffs are not required to include "'detailed factual allegations,' but more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation' is needed." *Id.* (quoting *Twombly,* 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal,* 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556).

<u>Cullingford's State Law Claims</u>

In her amended complaint, Cullingford asserts a state law claim of malicious prosecution against all Defendants. In their motion to dismiss, the City of Houston and Morales contend that Cullingford's state law claim must be dismissed for failure to comply with relevant notice requirements of the Texas Tort Claims Act and the Charter of the City of Houston. The Texas Tort Claims Act, which waives common law sovereign immunity for municipalities in certain circumstances, requires that a governmental unit "receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred." TEX. CIV. PRAC. & REM. CODE § 101.101(a) (Vernon 2007). The Texas Tort Claims Act also states that "[a] city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved." *Id.* at § 101.101(b). The City of Houston charter requires an injured person asserting claims against the City to "give the mayor and city council notice in writing of such injury . . . within 90 days after the same has been sustained." Article IX, Section 11, of the Charter of the City of Houston. The parties agree that Cullingford did not provide formal notice within 90 days nor within six months.

Cullingford agrees that she did not provide written notice to the City but contends that such notice was not required because "Defendants had actual notice of the state law claims against them because the incident occurred with the City's employees and an incident report was generated." Doc. 14 at 17. The Court disagrees. "The written notice requirement of § 101.101(a) does not apply if the governmental unit has 'actual notice . . . that the claimant has received some

injury.'" *Gonzales v. Harris County*, 2009 WL 995709, *6 (S.D.Tex. 2009) (quoting TEX. CIV. PRAC. & REM. CODE § 101.101(c)). "[A]ctual notice to a governmental unit requires knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved." *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). The "incident" to which Cullingford refers as the "actual notice" to the City is the arrest which gave rise to her claims now before this Court. The act of arresting Cullingford cannot put the City on notice that Cullingford believed that arrest to be unlawful. Additionally, Cullingford alleges that her treatment at the Mykawa Road jail caused her "pain, bruising and lacerations" but does not state whether these injuries were obvious to anyone but Cullingford at the time they occurred such that the City would have actual knowledge of her injuries. The City did not, therefore, have actual notice of Cullingford's claims against it. Because Cullingford did not provide timely notice to the City, her state law claims for malicious prosecution are dismissed.

<u>Cullingford's Section 1983 Claims Against the City of Houston</u>

The City of Houston also moves to dismiss Cullingford's Section 1983 claims against it on the grounds that Cullingford has failed adequately to plead facts demonstrating the existence of "a policy or governmental custom of the municipality [that] cause[d] the deprivation or violation of the constitutional rights complained of by the plaintiff." Doc. 7 at 5. Cullingford responds that the City essentially is "request[ing] this Court to impose a heightened pleading requirement" on her claim against the City. To the contrary, the City's merely asserts that Cullingford has failed to plead "enough facts to state a claim to relief that is plausible on its face"[1] because she has failed to allege an essential element of her claims against the City.

The allegedly wrongful conduct which forms the basis of Cullingford's complaint was

---

[1] *Twombly,* 550 U.S. at 570.

done by City of Houston employees. Any recovery against the City, therefore, is premised on Cullingford's ability to impute this conduct against the City. "A municipality or other local government may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011).

A municipality cannot be liable under Section 1983 simply because its employees violated that section. "*Respondeat superior* does not apply to municipalities for claims under § 1983." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Rather, a municipality is liable under § 1983 only if its 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (quoting *Monell* at 694).

In the absence of direct evidence of a municipal policy enacted by a legislative body or an individual with final decision-making authority, "[t]he plaintiff can also prove the existence of a municipal custom by pointing to a 'persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*)). *See also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("The plaintiff can prove the existence of a municipal policy through, *inter alia*, the actions of the municipality's legislative body or an individual with final decision making authority."). When "a plaintiff claims not that the municipality directly inflicted the injury, but caused an employee to do so [by its official policy or persistent, widespread practice constituting

a custom], 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.' *Okon v. Harris County Hosp. Dist.*, 426 Fed.Appx. 312, 317 (5th Cir. 2011) (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

In an attempt to demonstrate a widespread practice, Cullingford cites five instances of alleged police misconduct committed by Houston police. The Court notes that most of Cullingford's discussion of these incidents focuses on the City's failure or refusal to disclose details of the purportedly unlawful police conduct, provide video evidence thereof, or timely document the injuries caused by officer misconduct. In fact, Cullingford alleges that it is "a custom and practice by [sic] the City of Houston and it's [sic] employees to withhold videotape evidence of excessive force from public view[,]. . . of covering up excessive force by stopping the release of autopsy reports in police shootings[, and] . . . not speaking freely about police excessive force incidents at Houston City Council meetings." Doc. 6 at 9-10.

As alleged in her complaint, however, Cullingford's injuries arise directly out of 1) the search of her home and property, 2) her arrest, 3) a jailer's threat to "Taser" her if she did not stop speaking while in the Mykawa Street jail, and 4) the charges that were brought against her. *See id.* at 7-9. None of her injuries arose from subsequent failures of the individual officers or any other City of Houston employees adequately to report her injuries, to video-tape the events and subsequently provide such video-tapes to her or to the public, or to speak freely about her incident. The Defendants have moved to strike Cullingford's allegations of non-disclosure of video-tapes and autopsies as unrelated to her claims. These elements of the other excessive force incidents cannot indicate a widespread practice of the City that caused Cullingford's injuries and the Court therefore grants Defendants' motion to strike.

Additionally, numerous elements of Cullingford's claims against the City and the individual officers are entirely distinct from the examples she cites to demonstrate a "custom" of police misconduct. Cullingford's complaint includes claims for unreasonable search and seizure without probable cause in violation of the Fourth, Fifth, and Fourteenth Amendments, of malicious prosecution in violation of the Fourteenth Amendment, and of unreasonable restrictions on First Amendment freedom of speech. Doc. 6. None of the examples of police misconduct to which Cullingford cites in her attempt to establish a widespread practice includes such violations. Because Cullingford has alleged no set of facts that demonstrate a custom that caused the purported unreasonable and unlawful search of her home and property, her arrest, her prosecution, and the restriction on her speech, her claims against the City on these grounds must be dismissed.

Nevertheless, the five incidents to which Cullingford cites are examples of excessive force in violation of the Fourth Amendment. They are insufficient, however, to meet the "rigorous standards of culpability and causation . . . [required] to ensure that the municipality is not held liable solely for the actions of its employee." *Okon*, 426 Fed.Appx. at 17. Cullingford cites to five instances from 2008 to 2010 in which Houston police officers or jailers allegedly used excessive force during the court of an arrest or while a suspect was in custody:

- "In 2008 Charles Chukwu was arrested and taken to the Houston jail and Mykawa Road where he was beaten by at least one City of Houston jailer without any reason. . . . The jailers failed to file a timely use of force report and did not stop the beating of Mr. Chukwu nor did the Houston jailers report another Houston jailer for the obvious excessive force." Doc. 6 at 6.

- "On June 22, 2008, Henry Lee Madge was struck several times while in handcuffs by a

Houston police officer." *Id.* at 7.

- "Around February 6, 2009, Trenton Garrett was arrested and taken to the Houston jail at Mykawa Road where he was beaten by City of Houston jailers by at least strikes to the head without any reason. The jailers failed to file a timely use of force report and did not stop the beating of Mr. Garrett nor did the Houston jailers report another Houston jailer for the obvious excessive force." *Id.* at 6.

- "August 8, 2009, unarmed John Barnes, 39, was shot and killed by Houston Police officer Ryan G. Gardiner. March 15, 2006, Gardiner shot Robert Paul Cantrell. In 2006, Gardiner was identified as the HPD officer that used his Taser more than any other officer." *Id.* at 7.

- "In the late Spring of 2010 teenager Chad Holley was purposefully struck by a Houston police squad car and then violently beaten--by kicking, stomping and punching in the head, groin and other parts of his body--by least four Houston police officers while other Houston police officers looked on without intervention." *Id.* at 5.

While these events, if true, may be examples of the kind of gross police misconduct which violates the victim's constitutional rights, the Court disagrees that five isolated incidents taking place over two years and arising out of different and differing circumstances establish a "persistent, widespread practice . . . [which] is so common and well settled as to constitute a custom." *Bennett v. City of Slidell*, 735 F.2d at 862.

The incidents involving Officer Gardiner, particularly, contradict Cullingford's argument: That Gardiner "used his Taser more than any other officer" may indicate the aberrant conduct of a single officer, but not a department-wide policy. The four other incidents of unreasonable force are examples of purposeful assaults, beatings, or attacks. In contrast, Cullingford alleges that she

was "forcefully grabbed and shoved by several jailers in great excess for any need to use such force" (Doc. 6 at 4),  but does not claim that this shoving or grabbing was part of a concerted attack. In the context of her complaint, in fact, her allegations support, at most, an inference of unreasonable force used to detain her, not an intentional and violent attack. Cullingford therefore fails adequately to state a claim against the City for a policy or custom that caused her injuries.

Both in her complaint and in her response to the motion to dismiss, Cullingford mentions the City's failure to train its employees as another potential ground on which the City's liability could turn. Doc. 6 at 9 ("There is a custom and practice by the City of Houston through its employees to . . . failure to discipline appropriately [sic], failure to train and failure to supervise properly [sic]."); Doc. 14 at 13 ("The City of Houston's lack of training in excessive force, stopping excessive force and reporting excessive force are all implicated by Dr. Cullingford's live complaint."). While the City's failure to train its officers may be "implicated" by Cullingford's complaint, Cullingford has not adequately stated that the City is liable under that theory.

"While a municipality's failure to train its employees can give rise to § 1983 liability in certain circumstances, the inadequacy of the training must amount to 'deliberate indifference to the rights of a person with whom the [employees] come into contact.'" *Okon*, 426 Fed.Appx. at 319 (quoting *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009)). To establish inadequate training, a Plaintiff must allege "(1) [the municipality's] training procedures were inadequate, (2) [the municipality] was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the infringement of the [plaintiff's] rights." *World Wide Street Preachers Fellowship*, 591 F.3d at 756. Here, Cullingford has not alleged any of the three elements. Cullingford has not alleged

10 / 11

facts showing that a policy or practice of inadequate training existed, nor that the City was deliberately indifferent in adopting an adequate policy, nor how any such training policy caused the infringement of her rights. Because Cullingford has not alleged any set of facts that would demonstrate the City's liability for the actions of the individual officers in this case, then, her claims against the City must be dismissed.

Conclusion

For the foregoing reasons, the Court hereby

**ORDERS** that Defendants the City of Houston and Officer H.J. Morales, Jr.'s motion to dismiss (Doc. 7) is **GRANTED**. and The Court hereby

**ORDERS** that Hatice Cullingford's claims under state law against all Defendants are **DISMISSED**. Additionally, the Court hereby

**ORDERS** that Defendants' motion to strike Cullingford's factual allegations of the Defendants' non-disclosure of video-tape or autopsy evidence in other incidents is **GRANTED**. Finally, the Court hereby

**ORDERS** that Hatice Cullingford's federal law claims pursuant to Section 1983 brought against the City of Houston are **DISMISSED.**

Cullingford's federal law claims against the remaining Defendants, including Officer H. J. Morales, Jr., are unaffected by this order.

SIGNED at Houston, Texas, this 20th day of March, 2012.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE